DAVID ZARMI
California Bar No. 245636
8950 W Olympic Blvd., Ste. 533
Beverly Hills, CA 90211
310-841-6455
davidzarmi@gmail.com

*Attorney for Defendants*
*Centinela Skilled Nursing & Wellness Centre West, LLC*
*Brius Management Co.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ERIC HOLLOWAY, deceased, by and through his legal representative and successor in interest, SHALIMAH ABDULLAH; and SHALIMAH ABDULLAH, individually, | Case No. 2:21-cv-06106-DMG-AGR |
| Plaintiffs, | Assigned for all purposes to: Judge Dolly M. Gee |
| vs. | *[Removed from Los Angeles Superior Court Case No. 21STCV17868]* |
| CENTINELA SKILLED NURSING & WELLNESS CENTRE WEST, LLC dba CENTINELA SKILLED NURSING &WELLNESS CENTRE WEST, a California Skilled Nursing Facility; BRIUS MANAGEMENT CO., a California company; TAMAR RECHNITZ, an individual; and DOES 1-25, inclusive, | **RESPONSE TO ORDER TO SHOW CAUSE ISSUED ON AUGUST 4, 2021** |
| Defendants, | |
| -and- | |
| SAIDAH HOLLOWAY, an individual; AKBAR ABDULLAH, an individual; and RIHEIM HOLLOWAY, an individual, | |
| Nominal Defendants. | |

1

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................5

II.  THIS COURT HAS FEDERAL OFFICER JURISDICTION .....................................5

   A.  The Federal Officer Removal Statute.......................................................5

   B.  Centinela was "Acting under a Federal Officer" Because It Was     Involved in an Effort to Assist, or to Help Carry Out the Duties or    Tasks of a Federal Superior .........7

III.  THE PREP ACT CONFERS JURISDICTION UNDER THE COMPLETE PREEMPTION DOCTRINE ...........................................................................11

IV.  THE *GRABLE* DOCTRINE CONFERS FEDERAL JURISDICTION...................14

V.  IN THE ALTERNATIVE, THIS COURT SHOULD STAY PROCEEDINGS PENDING THE NINTH CIRCUIT'S DETERMINATION............................................16

VI.  CONCLUSION .......................................................................................17

---

2

# TABLE OF AUTHORITIES

**Cases**

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) .......................................................10

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ..............................................................10

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ...................................................10

*City of San Mateo v. Chevron Corp.*, 960 F.3d 586 (9th Cir. 2020). ..................................5

*Dennis v. Hart,* 724 F.3d 1249 (9th Cir. 2013) .....................................................................10

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) .....................................5

*Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992) .......................................................9

*Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017)...............5

*Grable & Sons Metal Prods. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005)................13

*Lyons v. Cucumber Holdings, LLC*, 2021 WL 364640 (C.D. Cal. Feb. 3, 2021)).............5

*McKay v. City & Cty. of San Francisco*,
    2016 U.S. Dist. LEXIS 178436 (N.D. Cal. Dec. 23, 2016) ............................................15

*Pack v. AC & S*, 838 F. Supp. 1099 (D. Md. 1993).................................................................8

*Padilla v. Brookfield Healthcare Ctr.*,
    2021 WL 1549689 (C.D. Cal. Apr. 19, 2021)....................................................5, 13, 14

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ...........................................................................................10

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) ..........................................................10

*Ryan v. Dow Chem. Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992)................................................9

*Venezia v. Robinson,* 16 F.3d 209 (7th Cir. 1994) ...............................................................10

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007)..................................................4, 5, 8, 9

*Wazelle v. Tyson Foods, Inc.*,
    2021 U.S. Dist. LEXIS 119085 (N.D. Tex., June 25, 2021)...........................................9

*Willingham v. Morgan*, 395 U.S. 402 (1969) ........................................................................5

---

**Statutes**

28 U.S.C. § 1442 ................................................................................5, 6

42 U.S.C. § 247d-6d.................................................................11, 12, 14, 15

42 U.S.C. § 247d-6e.................................................................11, 12

42 U.S.C. § 5195c.................................................................7, 8

## I. INTRODUCTION

On August 4, 2021, this Court ordered Defendants to show cause why the case should be removed from Los Angeles County Superior Court to federal court on the basis of the PREP Act. On the same date, Defendants filed a Motion to Dismiss the Complaint, which, while it had a different focus than the Notice of Removal, also further explicated many of the arguments addressing this Court's concern.

This Court has specifically noted its concern that its lacks jurisdiction for removal as set forth in *Padilla v. Brookfield Healthcare Ctr.*, No. CV 21-2062-DMG (ASX), 2021 WL 1549689 (C.D. Cal. Apr. 19, 2021) and *Lyons v. Cucumber Holdings, LLC*, No. CV 20-10571-JFW (JPRx), 2021 WL 364640 (C.D. Cal. Feb. 3, 2021). Defendants have argued that the Court has jurisdiction under three theories, any one of which would be sufficient for removal jurisdiction. Those are: (1) federal officer jurisdiction (Removal 12-16); (2) the doctrine of complete preemption (Removal at 3-10); and (3) the *Grable* substantial federal question doctrine (Removal at 10-12). Defendants will address each below.

## II. THIS COURT HAS FEDERAL OFFICER JURISDICTION

The *Lyons* court argued that under *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007), "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Lyons*, 2021 WL 364640 at *8. However, the *Watson* test is not so narrow.

### A. The Federal Officer Removal Statute

Under the federal officer removal statute, a federal court has jurisdiction over a civil action that is directed at "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1); *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) ("right of removal

under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court").  Unlike the general removal statute, the federal officer removal statute is to be "broadly construed" in favor of a federal forum.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252-53 (9th Cir. 2006).

To sustain federal subject matter jurisdiction under §1442(a)(1), the defendant bears the burden of showing: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims.  *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

As *Watson* explains, the "acting under" relationship test requires only that there be some "subjection, guidance, or control" on the part of the federal government and that the private person's conduct amounts to an effort "to assist, or to help carry out, the duties or tasks of the federal superior."  551 U.S. at 151-52.  The "acting under" requirement is broad and is also to be liberally construed.  *Id.* at 147.

The private party need not even act as an agent of a federal agency.  Rather, it is enough that the person is acting on behalf of the officer in a manner akin to an agency relationship.  *City of San Mateo v. Chevron Corp.*, 960 F.3d 586, 599 (9th Cir. 2020).  In particular, federal officer jurisdiction can be found "[w]here a private person acts as an assistant to a federal official in helping that official to enforce federal law."  *Watson*, 551 U.S. at 151-52.  "[T]he removal statute applies to private persons 'who lawfully assist' the federal officer 'in the performance of his official duty' . . . if they were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'"  *Id.* at 151.  The conscription of nursing homes by the CDC and CMS to

assist the federal government's efforts to stop the spread of COVID-19 across the country in these particular circumstances make removal appropriate here.

**B.    Centinela was "Acting under a Federal Officer" Because It Was Involved in an Effort to Assist, or to Help Carry Out the Duties or Tasks of a Federal Superior**

During the pandemic, the CDC and CMS engaged nursing homes in a uniquely mandated role to aid in the government's efforts to respond at a national level.  The agencies did more than simply promulgate general rules and regulations; they issued COVID-19 specific and detailed directives to nursing homes on how to address the pandemic.

An analysis of how COVID-19 changed the regulation of nursing facilities is enlightening in this regard.  Prior to COVID-19, regulation of nursing facilities was general in nature, even if prodigious in volume.  However, as a direct result of the COVID-19 pandemic, there was a clear and sudden paradigm shift as skilled nursing facilities were designated "critical infrastructure" by the federal government.[1]  Since then, through the federal directives issued by the CDC, CMS, and the California Department of Public Health surveyors contracted by CMS, federal authorities have explicitly guided operational decisions related to the clinical pandemic response in skilled nursing facilities.

CMS ordered facilities to restrict visitation, cancel communal dining, implement active screening of staff for fever and respiratory symptoms, limit access points, and amend policies regarding interaction with vendors, and directed them how to handle potential end-of-life interactions with family members, among other interventions. Facilities were instructed on, among other things, which patients and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, how to mitigate staff shortages including

---

[1] https://files.covid19.ca.gov/pdf/EssentialCriticalInfrastructureWorkers.pdf

when to permit COVID-19 positive but asymptomatic staff to return to work, and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19, including when to transfer them to a hospital.  (*See, e.g.*, n.1.)  The CDC directed facilities when to test patients and healthcare personnel and how to prioritize testing.  The CDC also directed facilities on how to isolate patients.  On March 17, 2020, the CDC directed facilities as to when and under what circumstances to use facemasks or N95 respirators, and how to conserve all types of PPE in view of known and ongoing shortages.

These very detailed clinical directives and instructions represented a marked departure from the regulatory structure which existed before the pandemic. Designating the activities of certain businesses as "critical infrastructure" enabled the federal government to enlist the aid of private parties to ensure the continued operation of any infrastructure "so vital to the United States that [its] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters."  42 U.S.C. § 5195c(e).

When the federal government instructs private parties on how to carry on their business during a national emergency it is enlisting those parties to carry out the duty of the government itself to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States."  § 5195c(b)(3).

Given the shortages of PPE, the federal government was telling nursing homes to disregard the usual standard of care in favor of a crisis standard.  Crisis standards of care are designed to provide cover for doctors and other health care workers who are forced by circumstances to provide less than the highest quality of care.[2]  Thus, on March 17,

---

[2] "Crisis standards of care guide decision-making designed to achieve the best outcome for a group of patients rather than focusing on an individual patient." https://www.aamc.org/coronavirus/faq-crisis-standards-care.

2020, the CDC provided that during periods of known PPE shortages, nursing homes were not required to comply with the commensurate standards of care.

These strategies can hardly be viewed as optional.  Nursing homes were not free to ignore these guidelines.  The CDC was guided by the need to protect the public health in an emergency and was less concerned with protecting the health of individual patients in any given situation.  Any claim that nothing changed in the relationship between Defendant and the federal government during the pandemic rings false in the context of a response to a public health emergency affecting the entire nation.

The assertion that federal jurisdiction under *Watson* does not apply to highly regulated industries is misguided.  Critically, *Watson* simply holds federal regulation by itself--even if highly detailed--cannot establish a federal officer relationship with a private party.  551 U.S. at 152.  *Watson* explains though that the relationship "typically involves 'subjection, guidance, or control,'" but at a minimum, "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.  *Id.* at 151. Defendant here assisted and helped carry out the duties or tasks of the federal agency as part of the nation's critical infrastructure and, as such, acted on behalf of the federal government for purposes of federal officer removal jurisdiction, which distinguishes this case from *Watson*.[3]  *See Pack v. AC & S*, 838 F. Supp. 1099, 1103 (D. Md. 1993) (federal officer jurisdiction is established by showing a removing defendant is subject to the "direct and detailed control" of a federal officer, meaning that the defendant must "show strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control"); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ("control requirement can be satisfied by strong government

---

[3] Skilled nursing facilities have been designated as a critical infrastructure industry by the Cybersecurity and Infrastructure Security Agency.
https://www.cisa.gov/sites/default/files/publications/ECIW_4.0_Guidance_on_Essential_Critical_Infrastructure_Workers_Final3_508_0.pdf.

intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction'"); *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 950 (E.D.N.Y. 1992) (removal proper where defendant was under "the direct and detailed control of various government officers" in the production of Agent Orange).

The high level of control exercised by CMS and CDC illustrates, in accordance with *Watson*, that Westwood was "acting under" federal officials because it was "involve[d] [in] an effort to assist, or to help carry out, the duties or tasks of [a] federal superior," and under the government's "subjection, guidance, or control." *Watson*, 551 U.S. at 151-52. In effect, nursing homes were enlisted as soldiers in the war against COVID-19.

In the recent decision of *Wazelle v. Tyson Foods, Inc.*, 2021 U.S. Dist. LEXIS 119085 (N.D. Tex., June 25, 2021), the court agreed that defendant Tyson acted under federal direction in continuing to operate its meat packing plants as critical infrastructure in the pandemic's early days, holding that Tyson was not merely complying with federal regulation, but was engaged in "an effort to help assist, or carry out, the duties and tasks of the federal superior' . . . by working directly with [the federal government] to guarantee that there was an adequate food supply." *Id.* at *10-11. Likewise, Centinela worked directly with CMS and the CDC to assure a safe community for its residents and to assist in the effort to stem the spread of the pandemic in the nation's nursing homes, which are part of the nation's critical infrastructure.

Defendants assert a federal defense in this case---namely, immunity under the PREP Act for their administration and use or non-use of covered countermeasures described above. In doing so, Defendant satisfies the "colorable federal defense" element of the federal officer removal statute. A defendant need only show it has a plausible federal defense. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). A defendant need not show that it is entitled to prevail in order to have access to the federal

forum.  *See, e.g.*, *Venezia v. Robinson,* 16 F.3d 209, 212 (7th Cir. 1994).  Accordingly, removal is also justified by federal officer jurisdiction.

## III.  THE PREP ACT CONFERS JURISDICTION UNDER THE COMPLETE PREEMPTION DOCTRINE

Complete preemption lies where "a federal statute wholly displaces the state-law cause of action."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Dennis v. Hart,* 724 F.3d 1249, 1254 (9th Cir. 2013).  The Ninth Circuit laid out a two-part complete preemption test which "exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action."  *City of Oakland v. BP PLC*, 969 F.3d 895, 905-06 (9th Cir. 2020).  The PREP Act completely displaced all claims arising from the administration, use or omission of a covered countermeasure and provided a substitute cause of action in one of two fora depending on the claim.  Thus, the PREP Act completely preempts Plaintiff's claims.

As set forth at length in Defendant's previous pleadings, all of Plaintiffs' state law claims relate to the use of countermeasures to treat, prevent, or mitigate COVID-19 in Centinela and will require invocation of these countermeasures in Centinela's defense.  (*See* Removal at 3-4, 8; MTD at 10-12.)  The claims directly relate to COVID-19 countermeasure taken by Defendants, including, but not limited to diagnosing residents with COVID-19 and disallowing visitors and in-house infection training, for which the PREP Act provides an exclusive remedy.  (*See, e.g.*, MTD at 15-16.)

Under the PREP Act's own terms, it provides broad immunity to any "covered person" with respect to all "claims for loss arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure" if a declaration has been issued with respect to that countermeasure, as it was here during the pandemic.  42 U.S.C. § 247d-6d(a)(1).

While Congress intended covered persons to be "immune from suit and liability," § 247d-6d(a)(1), Congress did not intend to leave victims without relief.  Rather, Congress

---

intended to channel the mine run of cases into federal administrative proceedings.  To wit, Congress created the Covered Countermeasure Process Fund to compensate eligible individuals for serious injuries or death from pandemic security countermeasures as identified by the Secretary.  § 247d-6e.  The Fund provides a streamlined, no-fault monetary fund.  The PREP Act--like the Worker's Compensation Act--creates a remedy that is "exclusive of any civil action or proceeding."  § 247d-6e(d)(4).

Second, the PREP Act provides for an exclusive federal remedy to potential plaintiffs for damages based upon allegations of willful misconduct which are to be brought in the United States District Court of the District of Columbia.  § 247d-6d(d)(1).

In addition to channeling all claims into federal venues, Congress intended for questions about the application of the PREP Act's immunity provisions to be heard only in federal court.  Under the Act, the D.C. Circuit has exclusive jurisdiction of an interlocutory appeal of an order in a case raising willfulness "denying a motion to dismiss or a motion for summary judgment based on the assertion of the immunity from suit" under the PREP Act.  § 247d-6d(e)(10).  But if the PREP Act does not confer federal jurisdiction because of its preemptive power, and questions about the application of the PREP Act's immunity are litigated in state court, then this provision would be given no effect because a party cannot appeal to the D.C. Circuit from state court.

Congress designed the PREP Act to be largely dormant, activated only "if a declaration" by the Secretary of HHS "has been issued" declaring a public health emergency by the Secretary of HHS.  § 247d-6d(a)(1); *see* § 247d-6d(b) (governing Secretary's declaration).  On March 10, 2020, the Secretary issued such a Declaration triggering the PREP Act and liability immunity for "recommended activities," including the distribution, administration, or use of covered countermeasures against COVID-19.

85 Fed. Reg. at 15201.  Ever since that initial declaration, the Secretary and HHS through Advisory Opinions has emphasized the broad, preemptive nature of the PREP Act.[4]

The HHS April 17, 2020, Advisory Opinion, for example, states that "immunity covers claims for loss sounding in tort or contract" and "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision."  The Secretary's amendment to the declaration from January 28, 2020 does not mince words: "The plain language of the PREP Act makes clear that there is complete preemption of state law" that "is justified to respond to the nation-wide public health emergency caused by COVID-19."  86 Fed. Reg. at 7874 (Feb. 2, 2021).

The Fifth Amendment to the Secretary's Declaration reiterates the complete preemption of state law based on the substantive federal interests at stake.  86 Fed. Reg. at 7874.  Nowhere in the Act or Declaration or its amendments or the Advisory Opinions does Congress or HSS suggest COVID-19 claimants have the option of pleading the panoply of state law claims in state courts instead of or in addition to PREP Act claims.

The statutory language, Secretary's Declarations, and Advisory Opinions, when read together as they must, support a finding that the PREP Act completely preempts Plaintiffs' claims in this case.  Congress has expressed a clear intent to provide (1) sweeping immunity from civil liability for all covered persons involved in the allocation, use, administration, manufacture, and distribution of a covered countermeasure; (2) an administrative fund; and (3) a federal cause of action for willful misconduct claims along with an exclusive federal venue and procedural requirements for adjudicating such claims.  Thus, the statute meets the even the Ninth Circuit's test for complete preemption.

This Court in *Padilla* was concerned that under *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987), "a case may not be removed to federal court on the basis of a

---

[4] The Fourth Amended Declaration requires that the Declaration "must be construed in accordance with the Advisory Opinions of the Office of the General Counsel" and incorporates the Advisory Opinions by reference. 85 Fed. Reg. at 79194-95.

federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Padilla*, 2021 WL 1549689 at *17.  However, this concern understandably stems from confusion over use of the word "preemption" in the "complete preemption exception."

*Caterpillar* is correctly cited as to "preemption."  However, the Ninth Circuit has already noted that "complete preemption" not "preemption" at all as it is a jurisdiction doctrine.  *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014).  This is why complete preemption can be an exception to the well-pleaded complaint rule which would otherwise not factor in federal defenses and focus solely on the complaint's allegations.  *Id.*  The Court recognized that the language is confusing, but begrudgingly accepted it as a fait accompli.  *See generally id.* at 946-49 (quoting *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000) ("'complete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field")).  Thus, for all of the above reasons, this Court has jurisdiction over the case under the complete preemption doctrine.

## IV.   THE *GRABLE* DOCTRINE CONFERS FEDERAL JURISDICTION

In addition to federal officer jurisdiction and the complete preemption doctrine, federal jurisdiction is also conferred by *Grable & Sons Metal Prods. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005).

As the HHS Secretary stated in the amended Declaration, 85 Fed. Reg. 79190, as well as AO 21-01, the PREP Act confers federal jurisdiction separately under the *Grable* doctrine articulated by the United States Supreme Court because "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that ***the case belongs in federal court***." AO-21 (emphasis added).  AO 21-01 further explains that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [the *Grable* doctrine]

in having a unified, whole-of-nation response to the COVID 19 pandemic among federal, state, local, and private-sector entities." AO 21-01 (quoting 85 Fed. Reg. at 79197).

The AO's interpretation of *Grable* is consistent with the Supreme Court's longstanding rule "that in certain cases federal question jurisdiction will lie over state-law claims that implicate federal issues." *Grable*, 545 U.S. at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

In this case, various elements of the PREP Act are embedded in Plaintiffs' state law claims. The PREP Act: (1) creates an exclusive federal cause of action" for injuries caused by willful misconduct; (2) establishes a compensation fund for injuries directly caused by the administration or use of covered countermeasures; (3) provides broad immunity for loss relating to the administration or use of covered countermeasures; and (4) preempts state laws that create different standards regarding covered PREP Act must be read together and not in isolation in deciding whether there are substantial embedded federal issues.

Perhaps more important is the fact the Secretary's Fourth Amended Declaration explicitly invokes *Grable* and confirms, after due analysis, that "there are substantial federal legal and policy issues . . . in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." 85 Fed. Reg. 79194. The OGC Advisory Opinion further explains the Fourth Amended Declaration "provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." The Advisory Opinion affirms that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in

federal court." In accordance with *Grable*, the Secretary analyzed the "congressionally approved balance of state and federal judicial responsibilities," 545 U.S. at 314, and determined that an exclusive federal forum was warranted given the unprecedented health emergency.

At a minimum, by seeking punitive damages--which necessarily entails activities rising to the level of willful misconduct--Plaintiffs have placed their claims squarely and exclusively in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 247d-6d(e)(1). (*See* Compl., pp. 12, 25.) More broadly, Plaintiffs' claims stem from allegations as to the administration or omission of policies in response to the outbreak of the COVID-19 virus, and directly implicate federal and state directives to these nursing homes--as members of the nation's critical infrastructure and partners with the federal government--as to how to combat the deadly virus.

A substantial and disputed federal issue regarding the application of the PREP Act to Plaintiff's claims and Defendant's federal defenses therefore necessarily exists and must be resolved by this Court to ensure the uniform and appropriate application of the PREP Act. Indeed, courts have long recognized federal jurisdiction under the *Grable* doctrine. *See, e.g.*, *McKay v. City & Cty. of San Francisco*, 2016 U.S. Dist. LEXIS 178436, *13 (N.D. Cal. Dec. 23, 2016) (finding federal jurisdiction under *Grable* where plaintiff's request that court enjoin use of flight paths was "tantamount" to a challenge to the validity of an FAA decision).

## V. IN THE ALTERNATIVE, THIS COURT SHOULD STAY PROCEEDINGS PENDING THE NINTH CIRCUIT'S DETERMINATION

On June 28, 2021, in *Rogers v. Lawndale Healthcare & Wellness Ctr., LLC*, CV-21-3922-FMO (C.D. Cal.) (Dkt. 16), Judge Fernando Olguin of this District stayed similar proceedings pending the appeal in *Saldana v. Glenhaven Healthcare LLC*, 20-56194 (9th Cir.). Defendant is also aware of at least a second appeal on the same issue in *Smith v. Colonial Care Ctr.*, 21-55377 (9th Cir.). Accordingly, in the alternative, if this

Court does not outright deny Plaintiffs' motion to remand, this Court should stay proceedings pending a decision on the matter by the Ninth Circuit.

## VI.   CONCLUSION

This Court should find that removal is proper under any one of three separate theories.  In the alternative, this Court should stay proceedings pending the determination of appeals on these very matters in the Ninth Circuit.

Respectfully submitted this eleventh day of August, 2021.

**ZARMI LAW**

By:  /s/  *David Zarmi*
8950 W Olympic Blvd., #533
Beverly Hills, CA 90211
310-841-6455
davidzarmi@gmail.com
*Attorney for Defendants*
*Centinela Skilled Nursing & Wellness*
*Centre West, LLC*
*Brius Management Co.*